

# MISSISSIPPI INSURANCE DEPARTMENT

501 N. WEST STREET, SUITE 1001
WOOLFOLK BUILDING
JACKSON, MISSISSIPPI 39201
www.mid.state.ms.us

**MAILING ADDRESS**
Post Office Box 79
Jackson, Mississippi 39205-0079
TELEPHONE: (601) 359-3569
FAX: (601) 359-2474
WATS: 1-800-562-2957 (Incoming - USA)

**MIKE CHANEY**
Commissioner of Insurance
State Fire Marshal

November 12, 2008

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
7007 2560 0002 2306 6114

State Farm Fire and Casualty Company
Attn: William E. Penna
1080 River Oaks Drive
Suite B-100
Flowood, MS 39232-7644

Re: Civil Action No.: 08-0448
Mark Kidd and Buffie Kidd v. State Farm Fire and Casualty Company, Mike
Meyers, Individually and as Agent of State Farm Fire and Casualty Company, et
al, Circuit Court, Hancock County, Mississippi

Dear Sir/Madam:

Please find enclosed copy of summons, complaint, and accompanying pleadings,
if any, which were served on this office at 2:50 p.m. on November 12, 2008.

It is requested that immediately upon your receipt of this letter you shall
give written acknowledgment of your receipt of same to this office, which
shall be in addition to the U. S. Postal Return Receipt which was given at
time this article was delivered.

Respectfully,

MIKE CHANEY
COMMISSIONER OF INSURANCE

BY *Cookie Bell*
Cookie Bell
Administrative Assistant
and Legal Process Clerk

MC:cb
Enclosures
Pc: The Honorable Karen L. Ruhr Ladner

FILED
NOV 17 2008
KAREN LADNER RUHR
CIRCUIT CLERK, HANCOCK CO
BY _____ D.C.



EXHIBIT
"A"

IN THE CIRCUIT COURT OF HANCOCK COUNTY, MISSISSIPPI

**MARK KIDD AND BUFFIE KIDD**                                     **PLAINTIFFS**

**V.**                                                            **CIVIL ACTION NO.08-0448**

**STATE FARM FIRE AND CASUALTY CO.,**
**MIKE MEYERS, Individually, and as Agent**
**of STATE FARM FIRE AND CASUALY COM.**
**and JOHN DOES 1-10.**                                          **DEFENDANTS**

## SUMMONS

THE STATE OF MISSISSIPPI
COUNTY OF HANCOCK

TO:    State Farm Fire & Casualty Company
       c/o Mike Chaney
       1001 Woolfolk State Office Building
       501 N. West Street
       Jackson, Mississippi 39201

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU
MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand-deliver a copy of a written response to the Complaint to
Edward Gibson, the attorney for the Plaintiff whose address is 544 Main Street, Bay Saint Louis,
Mississippi 39520. Your response must be mailed or delivered within thirty (30) days from the date
of delivery of this Summons and Complaint or a judgment by default will be entered against you for
the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a
reasonable time afterward.

Issued under my hand and seal of said Court, this the 16 day of Sept , 2008.

                                        HANCOCK COUNTY CIRCUIT CLERK

(SEAL)

                                        BY: _____
                                                                    D.C.

IN THE CIRCUIT COURT OF HANCOCK COUNTY, MISSISSIPPI

**MARK KIDD AND BUFFIE KIDD**                                                **PLAINTIFFS**

**V.**                                                                **CIVIL ACTION NO.08-0448**

**STATE FARM FIRE AND CASUALTY CO.,**
**MIKE MEYERS, Individually, and as Agent**
**of STATE FARM FIRE AND CASUALTY COM.**
**and JOHN DOES 1-10.**                                                **DEFENDANTS**

## SUMMONS

THE STATE OF MISSISSIPPI
COUNTY OF HANCOCK

TO:    Mike Meyers
       Individually and as Agent of State Farm Fire and Casualty Co.
       835 Highway 90
       Bay St. Louis, Mississippi 39502
       *Or Wherever He May Be Found*

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand-deliver a copy of a written response to the Complaint to Edward Gibson, the attorney for the Plaintiff whose address is 544 Main Street, Bay Saint Louis, Mississippi 39520. Your response must be mailed or delivered within thirty (30) days from the date of delivery of this Summons and Complaint or a judgment by default will be entered against you for the money or other things demanded in the Complaint.

You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and seal of said Court, this the 16 day of Sept , 2008

(SEAL)                          HANCOCK COUNTY CIRCUIT CLERK

                                BY: _____
                                                                    D.C.

IN THE CIRCUIT COURT OF HANCOCK COUNTY, MISSISSIPPI

**MARK KIDD AND BUFFIE KIDD**                                              **PLAINTIFFS**

**V.**                                          CIVIL ACTION NO. 08-0448

**STATE FARM FIRE AND CASUALTY CO.,**
**MIKE MEYERS, Individually, and as Agent**
**of STATE FARM FIRE AND CASUALTY COM.**
**and JOHN DOES 1-10.**                                                   **DEFENDANTS**

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COME NOW** the Plaintiffs, Mark and Buffie Kidd, and file this Complaint against State

Farm Fire and Casualty Company, Mike Meyers , Individually, and as agent of State Farm Fire and

Casualty Company, Rodney Tackett, Individually and as Agent for State Farm Fire and Casualty

Company, and John Does 1-10. As grounds for this Complaint, the Plaintiffs state as follows:

### I. PARTIES

1.      The Plaintiff Mark Kidd is an adult resident citizen of Hancock County, Mississippi, whose

residential address is 1101 Taranto Street, Waveland, MS, 39576. The Plaintiff is the named insured

under the policy or policies of insurance that are the subject of this Complaint. The Plaintiff suffered

substantial damage of his property located at 1101 Taranto Street, Waveland, MS, 39576, during

Hurricane Katrina, which struck the Mississippi Gulf Coast on August 29, 2005.

2.      The Plaintiff Buffie Kidd is an adult resident citizen of Hancock County, Mississippi, whose

residential address is 1101 Taranto Street, Waveland, MS, 39576.. The Plaintiff is the named

insured under the policy or policies of insurance that are the subject of this Complaint. The Plaintiff

suffered substantial damage of her property located at 1101 Taranto Street, Waveland, MS, 39576,

during Hurricane Katrina, which struck the Mississippi Gulf Coast on August 29, 2005.

FILED

AUG 2 6 2008

KAREN LADMER RUHR
CIRCUIT CLERK, HANCOCK CO.
BY_____D.C.

3.    The Defendant State Farm Fire and Casualty Company (hereafter "State Farm") is an insurance company with its corporate headquarters located at One State Farm Plaza, Bloomington, Illinois, 71701-0001. State Farm Fire and Casualty Company is licensed to do business in the State of Mississippi and conducts substantial business herein. State Farm Fire and Casualty Company may be served with process of this Court via service on its registered agent, Mr. William E. Penna, 1080 River Oaks Drive, Suite B-100, Flowood, Mississippi, 39232-7644 or on the Mississippi Insurance Commissioner. P.O. Box 79, Jackson, Mississippi, 39205-0079, pursuant to Miss. Code Ann. 83-21-1. In the alternative, State Farm Insurance Company may be served by process of this Court via United States Certified Mail pursuant to Miss. R. Civ. P. 4.

4.    Defendant Mike Meyers (hereafter "Agent Meyers") is an insurance agent licensed to do business in the State of Mississippi and conducts substantial business in the State of Mississippi. The Defendant may be served with process of this Court by personal service at 835 Highway 90, Bay St. Louis, Mississippi or wherever he may be found.

5.    Defendants John Does 1-10 are those persons, agents, employees, and/or representatives of Defendants State Farm and Agent Meyers whose conduct as described herein caused or contributed to the damages of the Plaintiffs, all of whose names and legal identities are unknown to the Plaintiffs at this time, but will be substituted by amendment when ascertained, individually and jointly.

6.    Hereinafter, unless specifically noted otherwise, the designation of the Defendant State Farm shall represent collectively, all Defendants, including State Farm Fire and Casualty Co., Agent Mike Meyers, and John Does 1-10.

## II. JURISDICTION AND VENUE

7.    This action arises out of the tortious breach by Defendants of their contract to pay insurance

2

benefits due to the Plaintiffs under the subject insurance policies.

8.      This Court has subject matter jurisdiction over this cause of action pursuant to applicable

Mississippi statutory law.

9.      Venue is proper in the Circuit Court of Hancock County, Mississippi pursuant to Miss. Code

Ann. §11 -11-3. The acts and omissions giving rise to the Plaintiffs' cause of action occurred in

Hancock County, Mississippi, and the subject property is located in Hancock County, Mississippi.

### III. ACTS OF AGENTS FOR DEFENDANTS

10.     Wherever it is alleged in this Complaint that Defendant State Farm did any act or thing or

failed to do any act or thing, it is meant also that the officers, agents or employees of Defendant State

Farm respectively performed, participated in, or failed to perform such acts or things while in the

course and scope of their employment or agency relationship with Defendant State Farm. To

reiterate, wherever the Complaint refers to "Defendant", it applies specifically to State Farm and

Agent Meyers both individually and collectively .

### IV. FACTS

11.     Prior to August 29, 2005 the Plaintiffs purchased real estate located at 1101 Taranto Street,

Waveland, MS, 39576. Situated upon and a part of this real estate was a dwelling and extensions.

12.     Prior to August 29, 2005, the Plaintiffs purchased insurance coverage through Agent Meyers,

The coverage included, among other, a Flood Policy from State Farm. A copy of which is attached

hereto and made a part hereof as Exhibit "A." All policies were purchased through Agent Meyers.

Said policies were bound, effective and kept current through August 29, 2005, as evidenced by the

declarations page attached hereto and made a part hereof as Exhibit "B".

13.     In purchasing insurance coverage from Defendant Meyers, Plaintiffs furnished Defendant

3

Meyers with information, including but not limited to location of said property, square footage, purchase price, and construction details.

14.     Defendant Meyers provided Plaintiffs Mark and Buffie Kidd with a price quote on flood insurance. Said quote included limits of liability under coverage $125,000 for the  dwelling and $50,000 personal property.

15.     At no time did Defendant Meyers inform Plaintiffs that additional flood insurance coverage was available for a minimal increase in premium

16.     Had Plaintiffs been aware that additional coverage was available for a minimal  increase in premium, they would have purchased the increased coverage as their intent  was to fully insure their property and lifestyle.

17.     Based on the Defendants' assurances, the Plaintiffs purchased the subject flood  policy (Exhibit "A").

18.     On and prior to August 29, 2005, the real property of the Plaintiffs were insured under State Farm Flood policy number 24-RC-0070-2. The Plaintiffs purchased the flood  policy  that is the subject of this Complaint from Defendant State Farm . The subject policy provided coverage for damage to Plaintiffs' home at 1101 Taranto Street, Waveland, MS, 39576. In addition, the  policy provided coverage as described in the declarations page and the policy.  ( Exhibits "B" and "A" respectively)

19.     At all times, the Plaintiffs paid the insurance premiums on subject policy in a timely fashion and manner.

20.     Plaintiffs, whose residence was in close proximity to the Bay of St. Louis, on the Gulf of Mexico, purchased the subject policy from State Farm for one of the express and primary purposes

4

of insuring against any property damage that could possibly result from hurricanes impacting the Mississippi Gulf Coast, including any and all damage proximately, efficiently, and often caused by hurricane, wind, rain, and "storm surge" proximately caused by hurricanes.

21.     Based on the representations made by State Farm and Agent Meyers and the express policy provisions, the Plaintiffs had the reasonable expectation that the combined policies would provide full and comprehensive coverage for all water damage to the insured residence and relied entirely upon the Defendants' representations made as to the contract for insurance.

22.     Plaintiffs' State Farm policies were in force on August 29, 2005, when Hurricane Katrina struck the Mississippi Gulf Coast.

23.     According to the terms of the subject policies, the Plaintiffs reasonably believed that losses caused by a hurricane were covered by the terms of the subject policy. The Plaintiffs relied upon the terms of the subject policy and the representations of one or more of the Defendants when the subject policy was purchased, issued and delivered by Defendant State Farm and Defendant Agent Meyers.

24.     On August 29, 2005, within the policy coverage period of the subject policy, Hurricane Katrina caused substantial to the Plaintiffs' home and other properties.

25.     As required under the subject policy, Plaintiffs provided timely notice to Defendant State Farm and Defendant Agent Meyers of the loss suffered as a result of Hurricane Katrina.

26.     On or about September 12, 2005, State Farm Adjuster Brian Hart performed an inspection on Plaintiffs' property. Said adjuster was retained by Defendant State Farm ostensibly to investigate Plaintiffs' claims. While not disputing Plaintiffs' claims, Adjuster Hart consistently undervalued the dollar amount of their claims.

27.     Though State Farm paid Plaintiffs the policy limits under the coverage for their personal

5

property contained in their flood policy, they continued to dispute the repair/replacement costs of the structure. Even though Plaintiffs submitted receipts indicating the actual costs, State Farm continued to deny the balance of Plaintiffs' claims.

28.    Plaintiffs have incurred substantial out-of-pocket, un-reimbursed expenses resulting from the wrongful denial of their insurance claim.

29.    If the Defendants are allowed to evade coverage under the policy, then the policy marketed and sold to the Plaintiffs by Defendant State Farm and Defendant Agent Meyers, according to State Farm's interpretation, was worthless. Plaintiffs suffered damage caused by a foreseen peril, not specifically excluded by the policy. Nevertheless, State Farm and the Defendants deny the full amount of Plaintiffs' claims.

## V.  CAUSES OF ACTION

### COUNT 1: NEGLIGENCE AND GROSS NEGLIGENCE OF STATE FARM

30.    Plaintiffs re-allege each of the foregoing paragraphs as if fully set out herein.

31.    Among other things, in the following non-exclusive particulars, the Defendants acted with negligence, gross negligence, willful disregard and/or malice. State Farm failed to monitor the actions of its officers, employees and/or agents; negligently failed to pay Plaintiffs' for a covered claim; negligently failed to train its insurance agents and/or adjusters to properly handle the insurance needs of their customers; negligently failed to properly follow and/or apply industry standards as well as their own corporate rules, regulations, policies and procedures in adjusting and honoring Plaintiffs' claim; negligently failed to explain the subject insurance policy to the Plaintiffs; and negligently failed to properly follow and/or apply industry standards as to the inspection, evaluation and adjustment of Plaintiffs' claim reported under the subject policy.

32.    The negligence of Defendants, as described above, has proximately caused Plaintiffs'

damages set forth in this Complaint.

## COUNT 2: NEGLIGENCE, GROSS NEGLIGENCE AND
## FAILURE TO PROCURE OF DEFENDANT AGENT MEYERS

33.    Plaintiffs re-allege each of the foregoing paragraphs as if fully set forth herein.

34.    Defendant Agent Meyers, as Plaintiffs' insurance agent and based on his expertise in the field

of property insurance, had a duty to the Plaintiffs in the following particulars: procure for Plaintiffs

insurance that covered their properties for damage caused by hurricanes; fully advise Plaintiffs on

what contingencies their policies covered and what contingencies were not covered; fully advise

Plaintiffs on additional insurance that they needed to insure their property against damage caused

by hurricanes.

35.    Defendant Agent Meyers breached the above-stated duties in failing to procure flood

insurance coverage sufficient to protect Plaintiffs in the event of a hurricane.

36.    Defendant Agent Meyers breached the above-stated duties in failing to recommend or procure

for Plaintiffs' insurance that would provide full and comprehensive coverage for the property

damage caused by Hurricane Katrina.

37.    Defendant Agent Meyers' negligence and/or gross negligence, as described above, has

proximately caused Plaintiffs' damages set forth in this Complaint.

## COUNT 3: BREACH OF FIDUCIARY DUTY

38.    The Plaintiffs re-allege each of the foregoing paragraphs as if fully set forth herein.

39.    By virtue of the dependency of Plaintiffs on the superior knowledge of Defendants and the

fact that the Plaintiffs placed their confidence and trust in Defendants to properly handle their

insurance matters, there existed a confidential and fiduciary relationship between Plaintiffs and Defendants.

40.    Defendants were aware of the Plaintiffs' reliance upon them to truthfully and completely advise them concerning their insurance matters.

41.    Defendants breached their fiduciary duty owed to the Plaintiffs in that they misrepresented the terms of the insurance policy which they induced the Plaintiffs to purchase and refused to honor the terms of the policy marketed, sold, issued and delivered to Plaintiffs. The Plaintiffs were under the reasonable belief, created by Defendant Agent Meyers in the role of agent for Defendant State Farm, that the purchase of hurricane coverage was sufficient to cover any losses to their home and additional properties for losses suffered during a hurricane.

42.    The Defendants breach of fiduciary duty, as described above, has proximately caused Plaintiffs' damages set forth in this Complaint.

### COUNT 4:  BREACH OF CONTRACT

43.    The Plaintiffs re-allege each of the foregoing paragraphs as if fully set out herein.

44.    The Plaintiffs entered into an insurance contract with the Defendants in which they contracted for, purchased, and were entitled to receive full insurance coverage, including flood insurance coverage, under the subject policies for the damage to the insured property.

45.    The Defendants breached the subject policy by denying full insurance coverage for the damage to Plaintiffs' insured real property.

46.    Plaintiffs contracted for coverage to their property for a specified amount and, even though Plaintiffs have proven to Defendants that their damages have exceeded the contracted amount, Defendant State Farm continues to deny payment of the full contracted amount.

47.    Defendant State Farm's breaches of contract have proximately caused substantial damage to Plaintiffs.

## COUNT 5: BAD FAITH REFUSAL TO PAY

48.    The Plaintiffs re-allege each of the foregoing paragraphs as if fully set out herein.

49.    The acts and omissions of the Defendants amounted to the tort of bad faith denial of an insurance claim in that the Defendants denied a timely reported and covered insurance claim without legitimate or arguable reason for doing so.

50.    Defendant State Farm failed to adequately and fairly inspect and adjust Plaintiffs' loss.

51.    Defendants acted with negligence, gross negligence, willful disregard and/or malice in refusing to pay the claim submitted by the Plaintiffs.  Such conduct rises to the level of an independent tort, entitling the Plaintiffs to an award of punitive damages.

## COUNT 6: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

52.    The Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs.

53.    The acts and omissions of the Defendants amounted to the tort of intentional infliction of emotional distress, in that, among other things, the Defendants knew that their actions in wrongfully and maliciously denying coverage to the Plaintiffs placed them under enormous financial and emotional stress, resulting in further damage and personal injury. The Plaintiffs have lost their home as a result of one of the deadliest and most destructive hurricanes ever to strike the United States. Defendants' refusal to compensate the Plaintiffs for their loss greatly increased Plaintiffs' emotional anguish, leading to adverse physical manifestations resulting from emotional stress.

54.    Defendant's intentional infliction of emotional distress has proximately caused substantial damage to Plaintiffs.

## COUNT 7: ESTOPPEL AND DETRIMENTAL RELIANCE

55.    The Plaintiffs re-allege and incorporate each and every preceding paragraph as if fully set forth herein.

56.    The Plaintiffs reasonably relied to their detriment on the misrepresentations concerning material facts made by the Defendants, and the concealment of material facts by the Defendants as set out in the foregoing paragraphs.

57.    Under the doctrines of detrimental reliance, equitable estoppel, and promissory estoppel, the defendants are liable to the Plaintiffs for their resulting damages. Further, the Defendants should be estopped from asserting any contractual and/or limitations defenses to the causes of action stated herein.

## COUNT 8: NEGLIGENT, GROSSLY NEGLIGENT AND WANTON FAILURE TO MONITOR AND TRAIN AGENTS

58.    The Plaintiffs re-allege and incorporate each and every preceding paragraph as if fully set forth herein.

59.    The Defendant State Farm was grossly negligent and/or wanton in failing to monitor the actions of their officers, employees, and/or agents.  The Defendants further negligently and/or wantonly failed to train their insurance agents and/or adjusters to properly handle the insurance needs of their customers, and they negligently and/or wantonly failed to properly follow and/or apply their own corporate rules, regulations, policies and procedures, as well as industry standards generally.

60.    As a proximate consequence of the Defendants' conduct, the Plaintiffs have suffered damages in an amount to be proven at trial, and is entitled to actual and punitive damages from the Defendants.

## COUNT 9: ACTION FOR DECLARATORY RELIEF

61.     The Plaintiffs re-allege each of the foregoing paragraphs as if fully set out herein.

62.     The Plaintiffs request that this Court declare that coverage exists under the subject policies and issue an order compelling Defendant State Farm to pay the amounts owing under the policies.

63.     This relief is necessary because Defendant State Farm has wrongfully refused to provide the contractually-mandated amount of coverage for Plaintiffs' claims despite the fact that the law of the State of Mississippi mandates that coverage shall be provided.

## COUNT 10: DECLARATION OF INSURANCE COVERAGE

64.     The Plaintiffs re-allege each of the foregoing paragraphs as if fully set out herein.

65.     Plaintiffs seek a Declaratory Judgment pursuant to Mississippi Rule of Civil Procedure 57 for the purposes of determining a question of actual controversy between the parties concerning their rights, obligations, and coverages under the subject policy.

66.     Based on the representations made by State Farm and Agent Meyers, and the express subject policy coverage provisions, the Plaintiffs are entitled to full insurance coverage under the subject policy for all damage to the insured property and loss of use caused by Hurricane Katrina, whether it be by hurricane winds, storm surge or both.

67.     The Plaintiffs therefore seek a declaration that the subject policy provides full insurance coverage for all damages to their insured residence, property, and loss of use caused by Hurricane Katrina.

## COUNT 11: INDEMNITY

68.     The Plaintiffs re-allege each of the foregoing paragraphs as if fully set out herein.

69.     State Farm is obligated under the subject policy and its representations to provide full insurance coverage to Plaintiffs for all damage to the insured residence, property and loss of use caused by Hurricane Katrina.

70.     However, State Farm has denied Plaintiffs' insurance coverage and has refused to pay them the full amount for their covered loss.

71.     As a direct and proximate result of State Farm's denial, Plaintiffs have been and will continue to be forced to pay a substantial amount of money out of their own pocket for their loss of use of the insured residence. Plaintiffs will also be required to pay hundreds of thousands of dollars to rebuild and/or replace destroyed property. This will consequently require Plaintiffs to incur additional debt.

72.     The money that Plaintiffs are now obligated to pay is money that State Farm in all fairness and equity should pay under the subject policy or otherwise. Plaintiffs are therefore entitled to indemnity from State Farm for all sums they have expended and will be required to expend, as well as debt they will be required to incur in order to repair, refurbish, and/or replace their insured residence and property.

73.     However, despite realizing substantial premiums from Plaintiffs, State Farm has withheld the insurance proceeds owed to Plaintiffs for hurricane damage to their insured property.

74.     State Farm has therefore been unjustly enriched at Plaintiffs' expense.

75.     Plaintiffs have suffered injury as a proximate result of State Farm's unjust enrichment. Plaintiffs have been and will continue to be forced to pay for costs that should in equity and good conscience be borne by State Farm under the subject policy.

76.     As a proximate result of State Farm's false and fraudulent representations and refusal to

provide full insurance coverage under the subject policy for the damage to Plaintiffs' insured residence and property caused by Hurricane Katrina, State Farm is in possession of premiums, insurance proceeds, and other monies that it in equity and in good conscience should not be entitled to retain.

77.    Plaintiffs are therefore entitled to damages resulting from State Farm's unjust enrichment, including the imposition of a Constructive Trust on all premiums Plaintiffs paid to State Farm and on the insurance proceeds wrongfully held by State Farm under their subject policy.

### COUNT 12: SPECIFIC PERFORMANCE

78.    The Plaintiffs re-allege each of the foregoing paragraphs as if fully set out herein.

79.    The Plaintiffs contracted for and paid valuable consideration for coverage in the amounts shown on the declarations page of insurance contract drafted by the Defendant State Farm. Said coverage specifically covers all direct accidental loss to the covered property due to flood damage.

80.    Therefore the Plaintiffs are entitled to specific performance of the insurance contract.

### COUNT 13: PUNITIVE DAMAGES

81.    The Plaintiffs re-allege each of the foregoing paragraphs as if fully set out herein.

82.    It is believed and therefore averred that Defendant, State Farm, through their policies, staff, subsidiaries, agents, adjusters, and employees knowingly, willingly and in reckless disregard of the rights of the insured, Mark Kidd and Buffie Kidd, did knowingly, arbitrarily, willfully and wrongfully deny the claims of the Plaintiffs, Mark Kidd and Buffie Kidd, without any legitimate and arguable reason, and in a reckless, willful and malicious manner.

83.    The actions of the Defendants were so egregious, callous, malicious, and grossly negligent,

as to infer intentional indifference and reckless disregard to the rights, both contractually and otherwise, of the Plaintiffs, Mark Kidd and Buffie Kidd.   The actions of the Defendants were reprehensible and entitle the Plaintiffs to punitive damages to punish the defendants from undertaking such actions again and deter others in the same or similar positions from undertaking such wrongful actions.

84.    Furthermore, the actions of the Defendants exhibit and intentional act against the Plaintiffs, so as to justify an award of punitive damages under Miss. Code Ann. §11-1-65.  Additionally, the Defendants conduct was so grossly negligent and was attended by circumstances of intentional and grossly negligent concealment of material facts, malice and willful and wanton misconduct with a reckless and callous disregard for the rights of the Plaintiffs and the public in general. The Defendants conduct in this case is part of a widespread and long established pattern and practice calculated to cheat insureds such as the Plaintiffs for the Defendants own gain.

85.    The Plaintiffs are entitled to punitive damages based upon the reprehensible actions of the Defendants in failing to perform its duties under the contract and the fiduciary duty owed to the Plaintiffs, although confronted with opportunity to correct the wrongful conduct of the Defendants. Furthermore the actions of the Defendants exhibited such callous disregard for the well being of the Plaintiffs, and other citizens of the State of Mississippi, similarly situated as to evidence intentional wrongdoing and the Plaintiffs are entitled to recover punitive damages as a deterrent to other similar businesses/corporations located within the State of Mississippi for the protection of citizens rights and livelihood in the state of Mississippi.

14

## VI. DEMAND FOR JURY TRIAL

86.    The Plaintiffs respectfully demand a trial by jury on all issues of fact presented by this Complaint.

## PRAYER FOR RELIEF

87.    Plaintiffs are entitled to full insurance coverage under the subject policy for the damage to the insured residence and property caused by Hurricane Katrina and other such equitable relief not set forth in the Complaint, including, but not limited to:

   a.    Declaration by this Court that the subject policy provides full insurance coverage for the damage caused by Hurricane Katrina to Plaintiffs' insured residence and contents;

   b.    Specific Performance of the subject policy;

   c.    Indemnity;

   d.    A Constructive Trust on insurance proceeds owed to Plaintiffs for the hurricane damage to their insured residence and property wrongfully held by State Farm and insurance premiums paid by Plaintiffs for coverage under the subject policy;

   e.    Attorneys' fees and expenses;

   f.    Court costs and expenses;

   g.    Prejudgment and post-judgment interests; and

   h.    Expedited consideration of this matter;

   i.    Contractual damages

   j.    Monetary damages;

   k.    Emotional distress damages;

l.      Punitive damages: and

m.      Any and all other legal and equitable relief deemed appropriate by the Court.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs respectfully request that upon a

trial of these causes, judgment will be entered against all Defendants for all full insurance coverage

for the damage to Plaintiffs' insured residence and property caused by Hurricane Katrina, an

injunction, specific performance of the subject policy indemnity, and other such equitable remedies

and relief prayed for herein.

Respectfully submitted this the ___ day of August, 2008.

MARK KIDD AND BUFFIE KIDD

By: _____

EDWARD GIBSON

OF COUNSEL:

John Hawkins, MS Bar No. 9556
Edward Gibson, MS Bar No. 100640
HAWKINS, STRACENER & GIBSON, PLLC
544 Main Street
Bay St. Louis, Mississippi 39520
Ph. (228) 469-0785; Fx. (228) 466-9233

Brehm T. Bell, MS Bar Roll No. 8433
BREHM T. BELL, PLLC
544 Main Street
Bay St. Louis, Mississippi 39520
Ph. (228) 467-0006; Fx. (228) 466-9233

Attorneys for Plaintiffs

FP-7920.4
(11/00)

# Standard Flood Insurance Policy

## *Dwelling Form*

**Issued Pursuant to the National Flood Insurance Act of 1968, or
Any Acts Amendatory Thereof, and Applicable Federal Regulations
in Title 44 of the Code of Federal Regulations, Subchapter B**

FP-7920.4
(11/00)



EXHIBIT

A

STANDARD FLOOD INSURANCE POLICY

DWELLING FORM

PLEASE READ THE POLICY CAREFULLY. THE FLOOD INSURANCE PROVIDED IS SUBJECT TO LIMITATIONS, RESTRICTIONS, AND EXCLUSIONS.

THIS POLICY COVERS ONLY:

1.  A NON-CONDOMINIUM RESIDENTIAL BUILDING DESIGNED FOR PRINCIPAL USE AS A DWELLING PLACE FOR ONE TO FOUR FAMILIES, OR

2.  A SINGLE-FAMILY DWELLING UNIT IN A CONDOMINIUM BUILDING.

## I. AGREEMENT

State Farm Fire and Casualty Company provides flood insurance under the terms of the National Flood Insurance Act of 1968 and its amendments, and Title 44 of the Code of Federal Regulations (CFR).

We will pay you for **direct physical loss by or from flood** to your insured property if you:

1.  Have paid the correct premium;

2.  Comply with all terms and conditions of this **policy**; and

3.  Have furnished accurate information and statements.

We have the right to review the information you give us at any time and to revise your **policy** based on our review.

## II. DEFINITIONS

A.  In this policy, "you" and "your" refer to the insured(s) shown on the **Declarations Page** of this policy and your spouse, if a resident of the same household. "Insured(s)" includes: Any mortgagee and loss payee named in the **Application and Declarations Page**, as well as any other mortgagee or loss payee determined to exist at the time of loss in the order of precedence. "We," "us," and "our" refer to the insurer.

Some definitions are complex because they are provided as they appear in the law or regulations, or result from court cases. The precise definitions are intended to protect you.

**Flood**, as used in this flood insurance **policy**, means:

1.  A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (at least one of which is your property) from:

    a.  Overflow of inland or tidal waters;

    b.  Unusual and rapid accumulation or runoff of surface waters from any source;

    c.  Mudflow.

2.  Collapse or subsidence of land along the shore of a lake or similar body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels that result in a **flood** as defined in A.1.a. above.

B.  The following are the other key definitions that we use in this **policy**:

1.  **Act.** The National Flood Insurance Act of 1968 and any amendments to it.

2.  **Actual Cash Value.** The cost to replace an insured item of property at the time of loss, less the value of its physical depreciation.

3.  **Application.** The statement made and signed by you or your agent in applying for this **policy**. The **application** gives information we use to determine the eligibility of the risk, the kind of **policy** to be issued, and the correct premium payment. The **application** is part of this flood insurance **policy**. For us to issue you a **policy**, the correct premium payment must accompany the **application**.

4.  **Base Flood.** A flood having a one percent chance of being equaled or exceeded in any given year.

FP-7920 4

5.  **Basement.** Any area of the building, including any sunken room or sunken portion of a room, having its floor below ground level (subgrade) on all sides.

6.  **Building.**

    a.  A structure with two or more outside rigid walls and a fully secured roof, that is affixed to a permanent site;

    b.  A manufactured home (a "manufactured home," also known as a mobile home, is a structure: built on a permanent chassis, transported to its site in one or more sections, and affixed to a permanent foundation); or

    c.  A travel trailer without wheels, built on a chassis and affixed to a permanent foundation, that is regulated under the community's floodplain management and building ordinances or laws.

    **Building** does not mean a gas or liquid storage tank or a recreational vehicle, park trailer, or other similar vehicle, except as described in **B.6.c.** above.

7.  **Cancellation.** The ending of the insurance coverage provided by this policy before the expiration date.

8.  **Condominium.** That form of ownership of real property in which each **unit** owner has an undivided interest in common elements.

9.  **Condominium Association.** The entity made up of the unit owners responsible for the maintenance and operation of:

    a.  Common elements owned in undivided shares by **unit** owners; and

    b.  Other real property in which the **unit** owners have use rights;

    where membership in the entity is a required condition of unit ownership.

10. **Declarations Page.** A computer-generated summary of information you provided in the **application** for insurance. The **Declarations Page** also describes the term of the policy, limits of coverage, and displays the premium and our name. The **Declarations Page** is a part of this flood insurance policy.

11. **Described Location.** The location where the insured building(s) or personal property are found. The described location is shown on the **Declarations Page.**

12. **Direct Physical Loss By or From Flood.** Loss or damage to insured property, directly caused by a **flood.** There must be evidence of physical changes to the property.

13. **Dwelling.** A building designed for use as a residence for no more than four families or a single-family unit

in a **building** under a **condominium** form of ownership.

14. **Elevated Building.** A building that has no basement and that has its lowest elevated floor raised above ground level by foundation walls, shear walls, posts, piers, pilings, or columns.

15. **Emergency Program.** The initial phase of a community's participation in the **National Flood Insurance Program.** During this phase, only limited amounts of insurance are available under the **Act.**

16. **Expense Constant.** A flat charge you must pay on each new or renewal **policy** to defray the expenses of the Federal Government related to flood insurance.

17. **Federal Policy Fee.** A flat charge you must pay on each new or renewal **policy** to defray certain administrative expenses incurred in carrying out the **National Flood Insurance Program.** This fee covers expenses not covered by the **expense constant.**

18. **Improvements.** Fixtures, alterations, installations, or additions comprising a part of the insured **dwelling** or the apartment in which you reside.

19. **Mudflow.** A river of liquid and flowing mud on the surfaces of normally dry land areas, as when earth is carried by a current of water. Other earth movements, such as landslide, slope failure, or a saturated soil mass moving by liquidity down a slope, are not **mudflows.**

20. **National Flood Insurance Program (NFIP).** The program of flood insurance coverage and floodplain management administered under the **Act** and applicable Federal regulations in Title 44 of the Code of Federal Regulations, Subchapter B.

21. **Policy.** The entire written contract between you and us. It includes:

    a.  This printed form;

    b.  The application and Declarations Page;

    c.  Any endorsement(s) that may be issued; and

    d.  Any renewal certificate indicating that coverage has been instituted for a new **policy** and new policy term.

    Only one **dwelling,** which you specifically described in the application, may be insured under this **policy.**

22. **Pollutants.** Substances that include, but are not limited to, any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned, or reclaimed.

23. **Post-FIRM Building.** A building for which construction or substantial improvement occurred after December 31, 1974, or on or after the effective date of an initial Flood Insurance Rate Map (FIRM), whichever is later.

24. **Probation Premium.** A flat charge you must pay on each new or renewal policy issued covering property in a community that the NFIP has placed on probation under the provisions of 44 CFR 59.24.

25. **Regular Program.** The final phase of a community's participation in the **National Flood Insurance Program.** In this phase, a Flood Insurance Rate Map is in effect and full limits of coverage are available under the **Act.**

26. **Special Flood Hazard Area.** An area having special flood, or mudflow, and/or flood-related erosion hazards, and shown on a Flood Hazard Boundary Map or Flood Insurance Rate Map as Zone A, AO, A1-A30, AE, A99, AH, AR, AR/A, AR/AE, AR/AH, AR/AO, AR/A1-A30, V1-V30, VE, or V.

27. **Unit.** A single-family unit you own in a condominium **building.**

28. **Valued Policy.** A policy in which the insured and the insurer agree on the value of the property insured, that value being payable in the event of a total loss. The Standard Flood Insurance Policy is not a valued **policy.**

---

## III. PROPERTY COVERED

### A.  COVERAGE A - BUILDING PROPERTY

We insure against **direct physical loss by or from flood** to:

1. The **dwelling** at the **described location,** or for a period of 45 days at another location as set forth in III.C.2.b., Property Removed to Safety.

2. Additions and extensions attached to and in contact with the dwelling by means of a rigid exterior wall, a solid load-bearing interior wall, a stairway, an elevated walkway, or a roof. At your option, additions and extensions connected by any of these methods may be separately insured. Additions and extensions attached to and in contact with the building by means of a common interior wall that is not a solid load-bearing wall are always considered part of the dwelling and cannot be separately insured.

3. A detached garage at the **described location.** Coverage is limited to no more than 10 percent of the limit of liability on the dwelling. Use of this insurance is at your option but reduces the **building** limit of liability. We do not cover any detached garage used or held for use for residential (i.e., **dwelling),** business, or farming purposes.

4. Materials and supplies to be used for construction, alteration, or repair of the **dwelling** or a detached garage while the materials and supplies are stored in a fully enclosed building at the described location or on an adjacent property.

5. A building under construction, alteration, or repair at the described location.

   a. If the structure is not yet walled or roofed as described in the definition for **building** (see II.B. 6.a.) then coverage applies:

   (1) Only while such work is in progress; or

   (2) If such work is halted, only for a period of up to 90 continuous days thereafter.

   b. However, coverage does not apply until the **building** is walled and roofed if the lowest floor, including the basement floor, of a non-**elevated building** or the lowest elevated floor of an **elevated building** is:

   (1) Below the **base flood** elevation in Zones AH, AE, A1-A30, AR, AR/AE, AR/AH, AR/A1-A30, AR/A, AR/AO; or

   (2) Below the **base flood** elevation adjusted to include the effect of wave action in Zones VE or V1-V30.

   The lowest floor levels are based on the bottom of the lowest horizontal structural member of the floor in Zones VE or V1-V30 and the top of the floor in Zones AH, AE, A1-A30, AR, AR/AE, AR/AH, AR/A1-A30, AR/A, AR/AO.

6. A manufactured home or a travel trailer as described in the Definitions section (see **II.B.6.b.** and **II.B.6.c.).**

   If the manufactured home or travel trailer is in a **special flood hazard area,** it must be anchored in the following manner at the time of the loss:

   a. By over-the-top or frame ties to ground anchors; or

   b. In accordance with the manufacturer's specifications; or

   c. In compliance with the community's floodplain management requirements;

unless it has been continuously insured by the NFIP at the same described location since September 30, 1982.

7.  The following items of property which are covered under Coverage A only:

    a.  Awnings and canopies;
    b.  Blinds;
    c.  Built-in dishwashers;
    d.  Built-in microwave ovens;
    e.  Carpet permanently installed over unfinished flooring;
    f.  Central air conditioners;
    g.  Elevator equipment;
    h.  Fire sprinkler systems;
    i.  Walk-in freezers;
    j.  Furnaces and radiators;
    k.  Garbage disposal units;
    l.  Hot water heaters, including solar water heaters;
    m.  Light fixtures;
    n.  Outdoor antennas and aerials fastened to **buildings**;
    o.  Permanently installed cupboards, bookcases, cabinets, paneling, and wallpaper;
    p.  Plumbing fixtures;
    q.  Pumps and machinery for operating pumps;
    r.  Ranges, cooking stoves, and ovens;
    s.  Refrigerators; and
    t.  Wall mirrors, permanently installed.

8.  Items of property in a **building** enclosure below the lowest elevated floor of an elevated post-FIRM **building** located in Zones A1-A30, AE, AH, AR, AR/A, AR/AE, AR/AH, AR/A1-A30, V1-V30, or VE, or in a **basement**, regardless of the zone. Coverage is limited to the following:

    a.  Any of the following items, if installed in their functioning locations and, if necessary for operation, connected to a power source:

        (1)  Central air conditioners;
        (2)  Cisterns and the water in them;
        (3)  Drywall for walls and ceilings in a basement and the cost of labor to nail it, unfinished and unfloated and not taped, to the framing;
        (4)  Electrical junction and circuit breaker boxes;
        (5)  Electrical outlets and switches;
        (6)  Elevators, dumbwaiters, and related equipment, except for related equipment installed below the **base flood** elevation after September 30, 1987;
        (7)  Fuel tanks and the fuel in them;
        (8)  Furnaces and hot water heaters;
        (9)  Heat pumps;
        (10) Nonflammable insulation in a **basement**;
        (11) Pumps and tanks used in solar energy systems;
        (12) Stairways and staircases attached to the **building**, not separated from it by elevated walkways;
        (13) Sump pumps;

        (14) Water softeners and the chemicals in them, water filters, and faucets installed as an integral part of the plumbing system;
        (15) Well water tanks and pumps;
        (16) Required utility connections for any item in this list; and
        (17) Footings, foundations, posts, pilings, piers, or other foundation walls and anchorage systems required to support a building.

    b.  Clean-up.

B.  **COVERAGE B - PERSONAL PROPERTY**

1.  If you have purchased personal property coverage, we insure against **direct physical loss by or from flood** to personal property inside a **building** at the **described location**, if:

    a.  The property is owned by you or your household family members; and

    b.  At your option, the property is owned by guests or servants.

    Personal property is also covered for a period of 45 days at another location as set forth in III.C.2.b., Property Removed to Safety.

    Personal property in a **building** that is not fully enclosed must be secured to prevent flotation out of the building. If the personal property does float out during a **flood**, it will be conclusively presumed that it was not reasonably secured. In that case there is no coverage for such property.

2.  Coverage for personal property includes the following property, subject to B.1. above, which is covered under Coverage B only:

    a.  Air conditioning units, portable or window type;
    b.  Carpets, not permanently installed, over unfinished flooring;
    c.  Carpets over finished flooring;
    d.  Clothes washers and dryers;
    e.  "Cook-out" grills;
    f.  Food freezers, other than walk-in, and food in any freezer; and
    g.  Portable microwave ovens and portable dishwashers.

3.  Coverage for items of property in a **building** enclosure below the lowest elevated floor of an **elevated post-FIRM building** located in Zones A1-A30, AE, AH, AR, AR/A, AR/AE, AR/AH, AR/A1-A30, V1-V30, or VE, or in a **basement**, regardless of the zone, is limited to the following items, if installed in their functioning locations and, if necessary for operation, connected to a power source:

    a.  Air conditioning units, portable or window type;
    b.  Clothes washers and dryers; and
    c.  Food freezers, other than walk-in, and food in any freezer.

4. If you are a tenant and have insured personal property under Coverage B in this policy, we will cover such property, including your cooking stove or range and refrigerator. The policy will also cover improvements made or acquired solely at your expense in the dwelling or apartment in which you reside, but for not more than 10 percent of the limit of liability shown for personal property on the Declarations Page. Use of this insurance is at your option but reduces the personal property limit of liability.

5. If you are the owner of a unit and have insured personal property under Coverage B in this policy, we will also cover your interior walls, floor, and ceiling (not otherwise covered under a flood insurance policy purchased by your condominium association) for not more than 10 percent of the limit of liability shown for personal property on the Declarations Page. Use of this insurance is at your option but reduces the personal property limit of liability.

6. Special Limits. We will pay no more than $2,500 for any one loss to one or more of the following kinds of personal property:

   a. Artwork, photographs, collectibles, or memorabilia, including but not limited to, porcelain or other figures, and sports cards;

   b. Rare books or autographed items;

   c. Jewelry, watches, precious and semiprecious stones, or articles of gold, silver, or platinum;

   d. Furs or any article containing fur which represents its principal value; or

   e. Personal property used in any business.

7. We will pay only for the functional value of antiques.

C. COVERAGE C - OTHER COVERAGES

1. Debris Removal

   a. We will pay the expense to remove non-owned debris on or in insured property and owned debris anywhere.

   b. If you or a member of your household perform the removal work, the value of your work will be based on the Federal minimum wage.

   c. This coverage does not increase the Coverage A or Coverage B limit of liability.

2. Loss Avoidance Measures

   a. Sandbags, Supplies, and Labor

      (1) We will pay up to $1,000 for costs you incur to protect the insured building from a flood or imminent danger of flood, for the following:

         (a) Your reasonable expenses to buy:

            (i). Sandbags, including sand to fill them;

            (ii) Fill for temporary levees;

            (iii) Pumps; and

            (iv) Plastic sheeting and lumber used in connection with these items.

         (b) The value of work, at the Federal minimum wage, that you or a member of your household perform.

      (2) This coverage for Sandbags, Supplies, and Labor applies only if damage to insured property by or from flood is imminent, and the threat of flood damage is apparent enough to lead a person of common prudence to anticipate flood damage. One of the following must also occur:

         (a) A general and temporary condition of flooding in the area near the described location must occur, even if the flood does not reach the insured building; or

         (b) A legally authorized official must issue an evacuation order or other civil order for the community in which the insured building is located calling for measures to preserve life and property from the peril of flood.

   This coverage does not increase the Coverage A or Coverage B limit of liability.

   b. Property Removed to Safety

      (1) We will pay up to $1,000 for the reasonable expenses you incur to move insured property to a place other than the described location that contains the property in order to protect it from flood or the imminent danger of flood.

Reasonable expenses include the value of work, at the Federal minimum wage, that you or a member of your household perform.

(2) If you move insured property to a location other than the described location that contains the property, in order to protect it from flood or the imminent danger of flood, we will cover such property while at that location for a period of 45 consecutive days from the date you begin to move it there. The personal property that is moved must be placed in a fully enclosed **building** or otherwise reasonably protected from the elements.

Any property removed, including a moveable home described in II.B.6.b. and c., must be placed above ground level or outside of the **special flood hazard area**.

This coverage does not increase the Coverage A or Coverage B limit of liability.

3. **Condominium Loss Assessments**

   a. If this **policy** insures a unit, we will pay, up to the Coverage A limit of liability, your share of loss assessments charged against you by the **condominium association** in accordance with the **condominium association's** articles of association, declarations and your deed.

   The assessment must be made as a result of **direct physical loss** by or from **flood** during the **policy** term, to the **building's** common elements.

   b. We will not pay any loss assessment charged against you:

   (1) And the **condominium association** by any governmental body;

   (2) That results from a deductible under the insurance purchased by the **condominium association** insuring common elements;

   (3) That results from a loss to personal property, including contents of a **condominium building**;

   (4) That results from a loss sustained by the **condominium association** that was not reimbursed under a **flood** insurance **policy** written in the name of the association under the **Act** because the building was not, at the time of loss, insured for an amount equal to the lesser of:

   (a) 80 percent or more of its full replacement cost; or

   (b) The maximum amount of insurance permitted under the **Act**;

   (5) To the extent that payment under this **policy** for a **condominium building** loss, in combination with payments under any other **NFIP** policies for the same building loss, exceeds the maximum amount of insurance permitted under the **Act** for that kind of **building**; or

   (6) To the extent that payment under this **policy** for a **condominium building** loss, in combination with any recovery available to you as a tenant in common under any **NFIP condominium association** policies for the same **building** loss, exceeds the amount of insurance permitted under the **Act** for a single-family dwelling.

   Loss assessment coverage does not increase the Coverage A limit of liability.

D. **COVERAGE D - INCREASED COST OF COMPLIANCE**

1. **General**

   This **policy** pays you to comply with a State or local floodplain management law or ordinance affecting repair or reconstruction of a structure suffering **flood** damage. Compliance activities eligible for payment are: elevation, floodproofing, relocation, or demolition (or any combination of these activities) of your structure. Eligible floodproofing activities are limited to:

   a. Nonresidential structures.

   b. Residential structures with **basements** that satisfy the Federal Emergency Management Agency's (FEMA's) standards published in the Code of Federal Regulations [44 CFR 60.6 (b) or (c)].

2. **Limit of Liability**

   We will pay you up to $20,000 under this Coverage D - Increased Cost of Compliance, which only applies to **policies** with **building** coverage (Coverage A). Our payment of claims under Coverage D is in addition to the amount of coverage which you selected on the **application** and which appears on the **Declarations Page**. But the maximum you can collect under this **policy** for both Coverage A - Building Property and Coverage D - Increased Cost of Compliance cannot exceed the maximum permitted under the **Act**. We do not charge a separate deductible for a claim under Coverage D.

3.  Eligibility

   a.  A structure covered under Coverage A - Building Property sustaining a loss caused by a **flood** as defined by this **policy** must:

       (1)  Be a "repetitive loss structure." A repetitive loss structure is one that meets the following conditions:

           (a)  The structure is covered by a contract of flood insurance issued under the NFIP.

           (b)  The structure has suffered **flood** damage on two occasions during a 10-year period which ends on the date of the second loss.

           (c)  The cost to repair the flood damage, on average, equaled or exceeded 25 percent of the market value of the structure at the time of each flood loss.

           (d)  In addition to the current claim, the NFIP must have paid the previous qualifying claim, and the State or community must have a cumulative, substantial damage provision or repetitive loss provision in its floodplain management law or ordinance being enforced against the structure; or

       (2)  Be a structure that has had flood damage in which the cost to repair equals or exceeds 50 percent of the market value of the structure at the time of the flood. The State or community must have a substantial damage provision in its floodplain management law or ordinance being enforced against the structure.

   b.  This Coverage D pays you to comply with State or local floodplain management laws or ordinances that meet the minimum standards of the **National Flood Insurance Program** found in the Code of Federal Regulations at 44 CFR 60.3. We pay for compliance activities that exceed those standards under these conditions:

       (1)  3.a.(1) above.

       (2)  Elevation or floodproofing in any risk zone to preliminary or advisory **base flood** elevations provided by FEMA which the State or local government has adopted and is enforcing for flood-damaged structures in such areas. (This includes compliance activities in B, C, X, or D zones which are being changed to zones with base flood elevations. This also includes compliance activities in zones where base flood

elevations are being increased, and a flood-damaged structure must comply with the higher advisory base flood elevation.) Increased Cost of Compliance coverage does not apply to situations in B, C, X, or D zones where the community has derived its own elevations and is enforcing elevation or floodproofing requirements for flood-damaged structures to elevations derived solely by the community.

       (3)  Elevation or floodproofing above the base flood elevation to meet State or local "freeboard" requirements, i.e., that a structure must be elevated above the base flood elevation.

   c.  Under the minimum NFIP criteria at 44 CFR 60.3 (b)(4), States and communities must require the elevation or floodproofing of structures in unnumbered A zones to the **base flood** elevation where elevation data is obtained from a Federal, State, or other source. Such compliance activities are also eligible for Coverage D.

   d.  This coverage will also pay for the incremental cost, after demolition or relocation, of elevating or floodproofing a structure during its rebuilding at the same or another site to meet State or local floodplain management laws or ordinances, subject to Exclusion D.5.g. below.

   e.  This coverage will also pay to bring a flood-damaged structure into compliance with State or local floodplain management laws or ordinances even if the structure had received a variance before the present loss from the applicable floodplain management requirements.

4.  Conditions

   a.  When a structure covered under Coverage A - Building Property sustains a loss caused by a **flood**, our payment for the loss under this Coverage D will be for the increased cost to elevate, floodproof, relocate, or demolish (or any combination of these activities) caused by the enforcement of current State or local floodplain management ordinances or laws. Our payment for eligible demolition activities will be for the cost to demolish and clear the site of the **building** debris or a portion thereof caused by the enforcement of current State or local floodplain management ordinances or laws. Eligible activities for the cost of clearing the site will include those necessary to discontinue utility service to the site and ensure proper abandonment of on-site utilities.

   b.  When the building is repaired or rebuilt, it must be intended for the same occupancy as the present building unless otherwise required by current floodplain management ordinances or laws.

5. **Exclusions**

Under this Coverage D - Increased Cost of Compliance, we will not pay for:

a. The cost to comply with any floodplain management law or ordinance in communities participating in the Emergency Program.

b. The cost associated with enforcement of any ordinance or law that requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**.

c. The loss in value to any insured **building** or other structure due to the requirements of any ordinance or law.

d. The loss in residual value of the undamaged portion of a **building** demolished as a consequence of enforcement of any State or local floodplain management law or ordinance.

e. Any Increased Cost of Compliance under this Coverage D:

   (1) Until the **building** is elevated, floodproofed, demolished, or relocated on the same or to another premises; and

   (2) Unless the **building** is elevated, floodproofed, demolished, or relocated as soon as reasonably possible after the loss; not to exceed 2 years (see **3.b.**).

f. Any code upgrade requirements, e.g., plumbing or electrical wiring, not specifically related to the State or local floodplain management law or ordinance.

g. Any compliance activities needed to bring additions or **improvements** made after the loss occurred into compliance with State or local floodplain management laws or ordinances.

h. Loss due to any ordinance or law that you were required to comply with before the current loss.

i. Any rebuilding activity to standards that do not meet the **NFIP's** minimum requirements. This includes any situation where you have received from the State or community a variance in connection with the current **flood** loss to rebuild the property to an elevation below the base flood elevation.

j. Increased Cost of Compliance for a garage or carport.

k. Any structure insured under an NFIP Group Flood Insurance Policy.

l. Assessments made by a **condominium** association on individual **condominium** unit owners to pay increased costs of repairing commonly owned **buildings** after a **flood** in compliance with State or local floodplain management ordinances or laws.

6. **Other Provisions**

a. Increased Cost of Compliance coverage will not be included in the calculation to determine whether coverage meets the 80 percent insurance-to-value requirement for replacement cost coverage as set forth in VII. General Conditions, V. Loss Settlement.

b. All other conditions and provisions of this **policy** apply.

---

## IV. PROPERTY NOT COVERED

We do not cover any of the following property:

1. Personal property not inside the fully enclosed **building**;

2. A **building**, and personal property in it, located entirely in, on, or over water or seaward of mean high tide if it was constructed or substantially improved after September 30, 1982;

3. Open structures, including a **building** used as a boathouse or any structure or **building** into which boats are floated, and personal property located in, on, or over water;

4. Recreational vehicles other than travel trailers described in II.B.6.c., whether affixed to a permanent foundation or on wheels;

5. Self-propelled vehicles or machines, including their parts and equipment. However, we do cover self-propelled vehicles or machines not licensed for use on public roads that are:

   a. Used mainly to service the **described location**, or

   b. Designed and used to assist handicapped persons,

   while the vehicles or machines are inside a **building** at the **described location**;

6. Land, land values, lawns, trees, shrubs, plants, growing crops, or animals;

7. Accounts, bills, coins, currency, deeds, evidences of debt, medals, money, scrip, stored value cards, postage stamps, securities, bullion, manuscripts, or other valuable papers;

8. Underground structures and equipment, including wells, septic tanks, and septic systems;

9. Those portions of walks, walkways, decks, driveways, patios, and other surfaces, all whether protected by a roof or not, located outside the perimeter, exterior walls of the insured building or the building in which the insured unit is located;

10. Containers, including related equipment, such as, but not limited to, tanks containing gases or liquids;

11. Buildings or units and all their contents if more than 49 percent of the **actual cash value of the building** or unit is below ground, unless the lowest level is at or above the base flood elevation and is below ground by reason of earth having been used as insulation material in conjunction with energy efficient building techniques;

12. Fences, retaining walls, seawalls, bulkheads, wharves, piers, bridges, and docks;

13. Aircraft or watercraft, or their furnishings and equipment;

14. Hot tubs and spas that are not bathroom fixtures, and swimming pools, and their equipment such as, but not limited to, heaters, filters, pumps, and pipes, wherever located;

15. Property not eligible for flood insurance pursuant to the provisions of the Coastal Barrier Resources Act and the Coastal Barrier Improvement Act and amendments to these acts;

16. Personal property you own in common with other unit owners comprising the membership of a **condominium association.**

## V. EXCLUSIONS

A. We only provide coverage for **direct physical loss by or from flood**, which means that we do not pay you for:

1. Loss of revenue or profits;

2. Loss of access to the insured property or described location;

3. Loss of use of the insured property or described location;

4. Loss from interruption of business or production;

5. Any additional living expenses incurred while the insured **building** is being repaired or is unable to be occupied for any reason;

6. The cost of complying with any ordinance or law requiring or regulating the construction, demolition, remodeling, renovation, or repair of property, including removal of any resulting debris. This exclusion does not apply to any eligible activities that we describe in Coverage D - Increased Cost of Compliance; or

7. Any other economic loss.

B. We do not insure a loss directly or indirectly caused by a flood that is already in progress at the time and date:

1. The policy term begins; or

2. Coverage is added at your request.

C. We do not insure for loss to property caused directly by earth movement even if the earth movement is caused by flood. Some examples of earth movement that we do not cover are:

1. Earthquake;

2. Landslide;

3. Land subsidence;

4. Sinkholes;

5. Destabilization or movement of land that results from accumulation of water in subsurface land area; or

6. Gradual erosion.

We do, however, pay for losses from mudflow and land subsidence as a result of erosion that are specifically covered under our definition of flood (see II.A.1.c. and II.A.2.);

D. We do not insure for direct physical loss caused directly or indirectly by any of the following:

1. The pressure or weight of ice;

2. Freezing or thawing;

3. Rain, snow, sleet, hail, or water spray;

4. Water, moisture, mildew, or mold damage that results primarily from any condition:

    a. Substantially confined to the dwelling; or

    b. That is within your control, including but not limited to:

       (1) Design, structural, or mechanical defects;

Page 9 of 19

(2) Failure, stoppage, or breakage of water or sewer lines, drains, pumps, fixtures, or equipment; or

(3) Failure to inspect and maintain the property after a flood recedes;

5. Water or waterborne material that:

a. Backs up through sewers or drains;

b. Discharges or overflows from a sump, sump pump, or related equipment; or

c. Seeps or leaks on or through the covered property;

unless there is a flood in the area and the flood is the proximate cause of the sewer or drain backup, sump pump discharge or overflow, or seepage of water;

6. The pressure or weight of water unless there is a flood in the area and the flood is the proximate cause of the damage from the pressure or weight of water;

7. Power, heating, or cooling failure unless the failure results from direct physical loss by or from flood to power, heating, or cooling equipment on the described location;

8. Theft, fire, explosion, wind, or windstorm;

9. Anything you or any member of your household do or conspire to do to cause loss by flood deliberately; or

10. Alteration of the insured property that significantly increases the risk of flooding.

E. We do not insure for loss to any building or personal property located on land leased from the Federal Government, arising from or incident to the flooding of the land by the Federal Government, where the lease expressly holds the Federal Government harmless under flood insurance issued under any Federal Government program.

F. We do not pay for the testing for or monitoring of pollutants unless required by law or ordinance.

## VI. DEDUCTIBLES

A. When a loss is covered under this policy, we will pay only that part of the loss that exceeds your deductible amount, subject to the limit of liability that applies. The deductible amount is shown on the **Declarations Page**.

However, when a **building** under construction, alteration, or repair does not have at least two rigid exterior walls and a fully secured roof at the time of loss, your deductible amount will be two times the deductible that would otherwise apply to a completed **building**.

B. In each loss from **flood**, separate deductibles apply to the **building** and personal property insured by this policy.

C. The deductible does not apply to:

1. III.C.2. Loss Avoidance Measures;

2. III.C.3. Condominium Loss Assessments; or

3. III.D. Increased Cost of Compliance.

## VII. GENERAL CONDITIONS

A. **Pairs and Sets**

In case of loss to an article that is part of a pair or set, we will have the option of paying you:

1. An amount equal to the cost of replacing the lost, damaged, or destroyed article, minus its depreciation; or

2. The amount that represents the fair proportion of the total value of the pair or set that the lost, damaged, or destroyed article bears to the pair or set.

B. **Concealment or Fraud and Policy Voidance**

1. With respect to all insureds under this **policy**, this **policy**:

a. Is void;

b. Has no legal force or effect;

c. Cannot be renewed; and

d. Cannot be replaced by a new NFIP policy;

if, before or after a loss, you or any other insured or your agent have at any time:

    (1) Intentionally concealed or misrepresented any material fact or circumstance;

    (2) Engaged in fraudulent conduct; or

    (3) Made false statements;

relating to this **policy** or any other NFIP insurance.

2. This **policy** will be void as of the date the wrongful acts described in B.1. above were committed.

3. Fines, civil penalties, and imprisonment under applicable Federal laws may also apply to the acts of fraud or concealment described above.

4. This **policy** is also void for reasons other than fraud, misrepresentation, or wrongful act. This **policy** is void from its inception and has no legal force under the following conditions:

    a. If the property is located in a community that was not participating in the NFIP on the **policy's** inception date and did not join or reenter the program during the **policy** term and before the loss occurred; or

    b. If the property listed on the **application** is otherwise not eligible for coverage under the NFIP.

C. **Other Insurance**

1. If a loss covered by this **policy** is also covered by other insurance that includes **flood** coverage not issued under the **Act**, we will not pay more than the amount of insurance that you are entitled to for lost, damaged, or destroyed property insured under this **policy** subject to the following:

    a. We will pay only the proportion of the loss that the amount of insurance that applies under this **policy** bears to the total amount of insurance covering the loss, unless C.1.b. or c. immediately below applies.

    b. If the other policy has a provision stating that it is excess insurance, this **policy** will be primary.

    c. This **policy** will be primary (but subject to its own deductible) up to the deductible in the other **flood** policy (except another policy as described in C.1.b. above). When the other deductible amount is reached, this **policy** will participate in the same proportion that the amount of insurance under this **policy** bears to the total amount of both policies, for the remainder of the loss.

2. If there is other insurance in the name of your **condominium association** covering the same property covered by this **policy**, then this **policy** will be in excess over the other insurance.

D. **Amendments, Waivers, Assignment**

This **policy** cannot be changed nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator. No action that we take under the terms of this **policy** constitutes a waiver of any of our rights. You may assign this **policy** in writing when you transfer title of your property to someone else, except under these conditions:

1. When this **policy** covers only personal property; or

2. When this **policy** covers a structure during the course of construction.

E. **Cancellation of Policy by You**

1. You may cancel this **policy** in accordance with the applicable rules and regulations of the NFIP.

2. If you cancel this **policy**, you may be entitled to a full or partial refund of premium also under the applicable rules and regulations of the NFIP.

F. **Nonrenewal of the Policy by Us**

Your **policy** will not be renewed:

1. If the community where your covered property is located stops participating in the NFIP; or

2. If your **building** has been declared ineligible under Section 1316 of the **Act**.

G. **Reduction and Reformation of Coverage**

1. If the premium we received from you was not enough to buy the kind and amount of coverage you requested, we will provide only the amount of coverage that can be purchased for the premium payment we received.

2. The **policy** can be reformed to increase the amount of coverage resulting from the reduction described in G.1. above to the amount you requested as follows:

    a. Discovery of insufficient premium or incomplete rating information before a loss.

        (1) If we discover before you have a **flood** loss that your premium payment was not enough to buy the requested amount of coverage, we will send you and any mortgagee or trustee known to us a bill for the required additional premium for the current **policy** term (or that portion of the current **policy** term following any endorsement changing

the amount of coverage). If you or the mortgagee or trustee pay the additional premium within 30 days from the date of our bill, we will reform the policy to increase the amount of coverage to the originally requested amount effective to the beginning of the current policy term (or subsequent date of any endorsement changing the amount of coverage).

(2) If we determine before you have a **flood loss** that the rating information we have is incomplete and prevents us from calculating the additional premium, we will ask you to send the required information. You must submit the information within 60 days of our request. Once we determine the amount of additional premium for the current policy term, we will follow the procedure in **G.2.a.(1)** above.

(3) If we do not receive the additional premium (or additional information) by the date it is due, the amount of coverage can only be increased by endorsement subject to any appropriate waiting period.

b.   Discovery of insufficient premium or incomplete rating information after a loss.

(1) If we discover after you have a flood loss that your premium payment was not enough to buy the requested amount of coverage, we will send you and any mortgagee or trustee known to us a bill for the required additional premium for the current and the prior **policy** terms. If you or the mortgagee or trustee pay the additional premium within 30 days from the date of our bill, we will reform the **policy** to increase the amount of coverage to the originally requested amount effective to the beginning of the prior **policy** term.

(2) If we discover after you have a flood loss that the rating information we have is incomplete and prevents us from calculating the additional premium, we will ask you to send the required information. You must submit the information before your claim can be paid. Once we determine the amount of additional premium for the current and prior **policy** terms, we will follow the procedure in **G.2.b.(1)** above.

(3) If we do not receive the additional premium by the date it is due, your flood insurance claim will be settled based on the reduced amount of coverage. The amount of coverage can only be increased by endorsement subject to any appropriate waiting period.

3.   However, if we find that you or your agent intentionally did not tell us, or falsified, any important fact or circumstance or did anything fraudulent relating to this insurance, the provisions of Condition B. Concealment or Fraud and Policy Voidance apply.

H.   **Policy Renewal**

1.   This policy will expire at 12:01 a.m. on the last day of the policy term.

2.   We must receive the payment of the appropriate renewal premium within 30 days of the expiration date.

3.   If we find, however, that we did not place your renewal notice into the U.S. Postal Service, or if we did mail it, we made a mistake, e.g., we used an incorrect, incomplete, or illegible address, which delayed its delivery to you before the due date for the renewal premium, then we will follow these procedures:

a.   If you or your agent notified us, not later than 1 year after the date on which the payment of the renewal premium was due, of nonreceipt of a renewal notice before the due date for the renewal premium, and we determine that the circumstances in the preceding paragraph apply, we will mail a second bill providing a revised due date, which will be 30 days after the date on which the bill is mailed.

b.   If we do not receive the premium requested in the second bill by the revised due date, then we will not renew the policy. In that case, the policy will remain an expired policy as of the expiration date shown on the Declarations Page.

4.   In connection with the renewal of this policy, we may ask you during the policy term to recertify, on a Recertification Questionnaire we will provide to you, the rating information used to rate your most recent application for or renewal of insurance.

I.   **Conditions Suspending or Restricting Insurance**

We are not liable for loss that occurs while there is a hazard that is increased by any means within your control or knowledge.

J.   **Requirements in Case of Loss**

In case of a flood loss to insured property, you must:

1.   Give prompt written notice to us;

2.   As soon as reasonably possible, separate the damaged and undamaged property, putting it in the best possible order so that we may examine it;

3.   Prepare an inventory of damaged property showing the quantity, description, actual cash value, and amount of loss. Attach all bills, receipts, and related documents;

4.  Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the **policy** signed and sworn to by you, and which furnishes us with the following information:

    a.  The date and time of loss;

    b.  A brief explanation of how the loss happened;

    c.  Your interest (for example, "owner") and the interest, if any, of others in the damaged property;

    d.  Details of any other insurance that may cover the loss;

    e.  Changes in title or occupancy of the covered property during the term of the **policy**;

    f.  Specifications of damaged **buildings** and detailed repair estimates;

    g.  Names of mortgagees or anyone else having a lien, charge, or claim against the covered property;

    h.  Details about who occupied any insured **building** at the time of loss and for what purpose; and

    i.  The inventory of damaged personal property described in J.3. above.

5.  In completing the proof of loss, you must use your own judgment concerning the amount of loss and justify that amount.

6.  You must cooperate with the adjuster or representative in the investigation of the claim.

7.  The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you complete it. However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.

8.  We have not authorized the adjuster to approve or disapprove claims or to tell you whether we will approve your claim.

9.  At our option, we may accept the adjuster's report of the loss instead of your proof of loss. The adjuster's report will include information about your loss and the damages you sustained. You must sign the adjuster's report. At our option, we may require you to swear to the report.

K.  **Our Options After a Loss**

Options we may, in our sole discretion, exercise after loss include the following:

1.  At such reasonable times and places that we may designate, you must:

    a.  Show us or our representative the damaged property;

    b.  Submit to examination under oath, while not in the presence of another insured, and sign the same; and

    c.  Permit us to examine and make extracts and copies of:

        (1)  Any policies of property insurance insuring you against loss and the deed establishing your ownership of the insured real property;

        (2)  **Condominium association documents** including the Declarations of the **condominium**, its Articles of Association or Incorporation, Bylaws, rules and regulations, and other relevant documents if you are a **unit owner in a condominium building**; and

        (3)  All books of accounts, bills, invoices and other vouchers, or certified copies pertaining to the damaged property if the originals are lost.

2.  We may request, in writing, that you furnish us with a complete inventory of the lost, damaged, or destroyed property, including:

    a.  Quantities and costs;

    b.  **Actual cash values** or replacement cost (whichever is appropriate);

    c.  Amounts of loss claimed;

    d.  Any written plans and specifications for repair of the damaged property that you can reasonably make available to us; and

    e.  Evidence that prior **flood** damage has been repaired.

3.  If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may:

    a.  Repair, rebuild, or replace any part of the lost, damaged, or destroyed property with material or property of like kind and quality or its functional equivalent; and

    b.  Take all or any part of the damaged property at the value we agree upon or its appraised value.

L.  **No Benefit to Bailee**

No person or organization, other than you, having custody of covered property will benefit from this insurance.

Page 13 of 19

**M.  Loss Payment**

1.  We will adjust all losses with you. We will pay you unless some other person or entity is named in the **policy** or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss (or within 90 days after the insurance adjuster files an adjuster's report signed and sworn to by you in lieu of a proof of loss) and:

    a.  We reach an agreement with you;

    b.  There is an entry of a final judgment; or

    c.  There is a filing of an appraisal award with us, as provided in VII.P.

2.  If we reject your proof of loss in whole or in part you may:

    a.  Accept our denial of your claim;

    b.  Exercise your rights under this **policy**; or

    c.  File an amended proof of loss, as long as it is filed within 60 days of the date of the loss.

**N.  Abandonment**

You may not abandon to us damaged or undamaged property insured under this **policy**.

**O.  Salvage**

We may permit you to keep damaged insured property after a loss, and we will reduce the amount of the loss proceeds payable to you under the **policy** by the value of the salvage.

**P.  Appraisal**

If you and we fail to agree on the **actual cash value** or, if applicable, replacement cost of your damaged property to settle upon the amount of loss, then either may demand an appraisal of the loss. In this event, you and we will each choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the State where the covered property is located. The appraisers will separately state the **actual cash value**, the replacement cost, and the amount of loss to each item. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of **actual cash value** and loss, or if it applies, the replacement cost and loss.

Each party will:

1.  Pay its own appraiser; and

2.  Bear the other expenses of the appraisal and umpire equally.

**Q.  Mortgage Clause**

The word "mortgagee" includes trustee.

Any loss payable under Coverage A - Building Property will be paid to any mortgagee of whom we have actual notice as well as any other mortgagee or loss payee determined to exist at the time of loss, and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

1.  Notifies us of any change in the ownership or occupancy, or substantial change in risk of which the mortgagee is aware;

2.  Pays any premium due under this **policy** on demand if you have neglected to pay the premium; and

3.  Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so.

All of the terms of this **policy** apply to the mortgagee.

The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building.

If we decide to cancel or not renew this **policy**, it will continue in effect for the benefit of the mortgagee only for 30 days after we notify the mortgagee of the cancellation or nonrenewal.

If we pay the mortgagee for any loss and deny payment to you, we are subrogated to all the rights of the mortgagee granted under the mortgage on the property. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**R.  Suit Against Us**

You may not sue us to recover money under this **policy** unless you have complied with all the requirements of the **policy**. If you do sue, you must start the suit within 1 year after the date of the written denial of all or part of the claim, and you must file the suit in the United States District Court of the district in which the insured property was located at the time of loss. This requirement applies to any claim that you may have under this **policy** and to any dispute that you may have arising out of the handling of any claim under the **policy**.

**S.  Subrogation**

Whenever we make a payment for a loss under this **policy**, we are subrogated to your right to recover for that loss from any other person. That means that your right to

recover for a loss that was partly or totally caused by someone else is automatically transferred to us, to the extent that we have paid you for the loss. We may require you to acknowledge this transfer in writing. After the loss, you may not give up our right to recover this money or do anything that would prevent us from recovering it. If you make any claim against any person who caused your loss and recover any money, you must pay us back first before you may keep any of that money.

**T.  Continuous Lake Flooding**

1.  If your insured **building** has been flooded by rising lake waters continuously for 90 days or more and it appears reasonably certain that a continuation of this flooding will result in a covered loss to the insured **building** equal to or greater than the building policy limits plus the deductible or the maximum payable under the policy for any one building loss, we will pay you the lesser of these two amounts without waiting for the further damage to occur if you sign a release agreeing:

    a.  To make no further claim under this **policy**;

    b.  Not to seek renewal of this **policy**;

    c.  Not to apply for any flood insurance under the Act for property at the **described location**; and

    d.  Not to seek a premium refund for current or prior terms.

    If the **policy** term ends before the insured **building** has been flooded continuously for 90 days, the provisions of this paragraph **T.1.** will apply when the insured **building** suffers a covered loss before the **policy** term ends.

2.  If your insured **building** is subject to continuous lake flooding from a closed basin lake, you may elect to file a claim under either paragraph **T.1.** above or paragraph **T.2.** (A "closed basin lake" is a natural lake from which water leaves primarily through evaporation and whose surface area now exceeds or has exceeded 1 square mile at any time in the recorded past. Most of the nation's closed basin lakes are in the western half of the United States, where annual evaporation exceeds annual precipitation and where lake levels and surface areas are subject to considerable fluctuation due to wide variations in the climate. These lakes may overtop their basins on rare occasions.) Under this paragraph **T.2.** we will pay your claim as if the **building** is a total loss even though it has not been continuously inundated for 90 days, subject to the following conditions:

    a.  Lake **flood** waters must damage or imminently threaten to damage your **building**.

    b.  Before approval of your claim, you must:

        (1)  Agree to a claim payment that reflects your buying back the salvage on a negotiated basis; and

        (2)  Grant the conservation easement described in FEMA's "Policy Guidance for Closed Basin Lakes," to be recorded in the office of the local recorder of deeds. FEMA, in consultation with the community in which the property is located, will identify on a map an area or areas of special consideration (ASC) in which there is a potential for flood damage from continuous lake flooding. FEMA will give the community the agreed-upon map showing the ASC. This easement will only apply to that portion of the property in the ASC. It will allow certain agricultural and recreational uses of the land. The only structures that it will allow on any portion of the property within the ASC are certain simple agricultural and recreational structures. If any of these allowable structures are insurable **buildings** under the NFIP and are insured under the NFIP, they will not be eligible for the benefits of this paragraph **T.2.** If a U.S. Army Corps of Engineers certified **flood** control project or otherwise certified **flood** control project later protects the property, FEMA will, upon request, amend the ASC to remove areas protected by those projects. The restrictions of the easement will then no longer apply to any portion of the property removed from the ASC; and

        (3)  Comply with paragraphs **T.1.a.** through **T.1.d.** above.

    c.  Within 90 days of approval of your claim, you must move your **building** to a new location outside the ASC. FEMA will give you an additional 30 days to move if you show that there is sufficient reason to extend the time.

    d.  Before the final payment of your claim, you must acquire an elevation certificate and a floodplain development permit from the local floodplain administrator for the new location of your **building**.

    e.  Before the approval of your claim, the community having jurisdiction over your **building** must:

        (1)  Adopt a permanent land use ordinance, or a temporary moratorium for a period not to exceed 6 months to be followed immediately by a permanent land use ordinance, that is consistent with the provisions specified in the easement required in paragraph **T.2.b.** above.

        (2)  Agree to declare and report any violations of this ordinance to FEMA so that under Section 1316 of the National Flood Insurance Act of 1968, as amended, flood insurance to the **building** can be denied; and

(3) Agree to maintain as deed-restricted, for purposes compatible with open space or agricultural or recreational use only, any affected property the community acquires an interest in. These deed restrictions must be consistent with the provisions of paragraph T.2.b. above, except that, even if a certified project protects the property, the land use restrictions continue to apply if the property was acquired under the Hazard Mitigation Grant Program or the Flood Mitigation Assistance Program. If a nonprofit land trust organization receives the property as a donation, that organization must maintain the property as deed-restricted, consistent with the provisions of paragraph T.2.b. above.

f. Before the approval of your claim, the affected State must take all action set forth in FEMA's "Policy Guidance for Closed Basin Lakes."

g. You must have NFIP flood insurance coverage continuously in effect from a date established by FEMA until you file a claim under paragraph T.2. If a subsequent owner buys NFIP insurance that goes into effect within 60 days of the date of transfer of title, any gap in coverage during that 60-day period will not be a violation of this continuous coverage requirement. For the purpose of honoring a claim under this paragraph T.2., we will not consider to be in effect any increased coverage that became effective after the date established by FEMA. The exception to this is any increased coverage in the amount suggested by your insurer as an inflation adjustment.

h. This paragraph T.2. will be in effect for a community when the FEMA Regional Director for the affected region provides to the community, in writing, the following:

(1) Confirmation that the community and the State are in compliance with the conditions in paragraphs T.2.e. and T.2.f. above; and

(2) The date by which you must have flood insurance in effect.

**U. Duplicate Policies Not Allowed**

1. We will not insure your property under more than one NFIP policy.

If we find that the duplication was not knowingly created, we will give you written notice. The notice will advise you that you may choose one of several options under the following procedures:

a. If you choose to keep in effect the **policy** with the earlier effective date, you may also choose to add the coverage limits of the later **policy** to the limits of the earlier **policy**. The change will become effective as of the effective date of the later **policy**.

b. If you choose to keep in effect the **policy** with the later effective date, you may also choose to add the coverage limits of the earlier **policy** to the limits of the later **policy**. The change will be effective as of the effective date of the later **policy**.

In either case, you must pay the pro rata premium for the increased coverage limits within 30 days of the written notice. In no event will the resulting coverage limits exceed the permissible limits of coverage under the Act or your insurable interest, whichever is less.

We will make a refund to you, according to applicable NFIP rules, of the premium for the **policy** not being kept in effect.

2. Your option under Condition U. Duplicate Policies Not Allowed to elect which NFIP policy to keep in effect does not apply when duplicates have been knowingly created. Losses occurring under such circumstances will be adjusted according to the terms and conditions of the earlier **policy**. The **policy** with the later effective date will be canceled.

**V. Loss Settlement**

1. **Introduction**

This policy provides three methods of settling losses: Replacement Cost, Special Loss Settlement, and **Actual Cash Value**. Each method is used for a different type of property, as explained in a.-c. below.

a. Replacement Cost loss settlement, described in V.2. below, applies to a single-family **dwelling** provided:

(1) It is your principal residence, which means that, at the time of loss, you or your spouse lived there for at least 80 percent of:

(a) The 365 days immediately preceding the loss; or

(b) The period of your ownership, if you owned the **dwelling** for less than 365 days; and

(2) At the time of loss, the amount of insurance in this **policy** that applies to the dwelling is 80 percent or more of its full replacement cost immediately before the loss, or is the maximum amount of insurance available under the NFIP.

b. Special loss settlement, described in V.3. below, applies to a single-family **dwelling** that is a manufactured or mobile home or a travel trailer.

c. Actual Cash Value loss settlement applies to a single-family **dwelling** not subject to replacement cost or special loss settlement, and to the property listed in V.4. below.

2.  **Replacement Cost Loss Settlement**

The following loss settlement conditions apply to a single-family dwelling described in V.1.a. above:

a.  We will pay to repair or replace the damaged **dwelling** after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

   (1)  The building limit of liability shown on your **Declarations Page**;

   (2)  The replacement cost of that part of the **dwelling** damaged, with materials of like kind and quality, and for like use; or

   (3)  The necessary amount actually spent to repair or replace the damaged part of the **dwelling** for like use.

b.  If the **dwelling** is rebuilt at a new location, the cost described above is limited to the cost that would have been incurred if the **dwelling** had been rebuilt at its former location.

c.  When the full cost of repair or replacement is more than $1,000 or more than 5 percent of the whole amount of insurance that applies to the **dwelling**, we will not be liable for any loss under V.2.a. above or V.4.a.(2) below unless and until actual repair or replacement is completed.

d.  You may disregard the replacement cost conditions above and make claim under this **policy** for loss to dwellings on an actual cash value basis. You may then make claim for any additional liability according to V.2.a., b., and c. above, provided you notify us of your intent to do so within 180 days after the date of loss.

e.  If the community in which your **dwelling** is located has been converted from the **Emergency Program** to the **Regular Program** during the current policy term, then we will consider the maximum amount of available **NFIP** insurance to be the amount that was available at the beginning of the current **policy** term.

3.  **Special Loss Settlement**

a.  The following loss settlement conditions apply to a single-family **dwelling** that:

   (1)  Is a manufactured or mobile home or a travel trailer, as defined in II.B.6.b. and II.B.6.c.;

   (2)  Is at least 16 feet wide when fully assembled and has an area of at least 600 square feet within its perimeter walls when fully assembled; and

   (3)  Is your principal residence, as specified in V.1.a.(1) above.

b.  If such a **dwelling** is totally destroyed or damaged to such an extent that, in our judgment, it is not economically feasible to repair, at least to its predamage condition, we will, at our discretion, pay the least of the following amounts:

   (1)  The lesser of the replacement cost of the **dwelling** or 1.5 times the **actual cash value**, or

   (2)  The **building limit** of liability shown on your **Declarations Page**.

c.  If such a **dwelling** is partially damaged and, in our judgment, it is economically feasible to repair it to its predamage condition, we will settle the loss according to the Replacement Cost conditions in paragraph V.2. above.

4.  **Actual Cash Value Loss Settlement**

The types of property noted below are subject to **actual cash value** [or in the case of V.4.a.(2) below, proportional] loss settlement.

a.  A **dwelling**, at the time of loss, when the amount of insurance on the **dwelling** is both less than 80 percent of its full replacement cost immediately before the loss and less than the maximum amount of insurance available under the NFIP. In that case, we will pay the greater of the following amounts, but not more than the amount of insurance that applies to that **dwelling**:

   (1)  The **actual cash value**, as defined in II.B.2., of the damaged part of the **dwelling**; or

   (2)  A proportion of the cost to repair or replace the damaged part of the **dwelling**, without deduction for physical depreciation and after application of the deductible.

   This proportion is determined as follows: If 80 percent of the full replacement cost of the **dwelling** is less than the maximum amount of insurance available under the NFIP, then the proportion is determined by dividing the actual amount of insurance on the **dwelling** by the amount of insurance that represents 80 percent of its full replacement cost. But if 80 percent of the full replacement cost of the **dwelling** is greater than the maximum amount of insurance available under the NFIP, then the proportion is determined by dividing the actual amount of insurance on the **dwelling** by the maximum amount of insurance available under the NFIP.

b.  A two-, three-, or four-family **dwelling**.

c.  A **unit** that is not used exclusively for single-family dwelling purposes.

d.  Detached garages.

e.  Personal property.

f.  Appliances, carpets, and carpet pads.

g.  Outdoor awnings, outdoor antennas or aerials of any type, and other outdoor equipment.

h.  Any property covered under this policy that is abandoned after a loss and remains as debris anywhere on the described location.

i.  A dwelling that is not your principal residence.

5.  **Amount of Insurance Required**

To determine the amount of insurance required for a dwelling immediately before the loss, do not include the value of:

a.  Footings, foundations, piers, or any other structures or devices that are below the undersurface of the lowest basement floor and support all or part of the dwelling;

b.  Those supports listed in V.5.a. above that are below the surface of the ground inside the foundation walls if there is no basement; and

c.  Excavations and underground flues, pipes, wiring, and drains.

The Coverage D - Increased Cost of Compliance limit of liability is not included in the determination of the amount of insurance required.

---

## VIII. LIBERALIZATION CLAUSE

If we make a change that broadens your coverage under this edition of our **policy**, but does not require any additional premium, then that change will automatically apply to your insurance as of the date we implement the change, provided that this implementation date falls within 60 days before, or during, the **policy** term stated on the **Declarations Page**.

---

## IX. WHAT LAW GOVERNS

This **policy** and all disputes arising from the handling of any claim under the **policy** are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.), and Federal common law.

---

IN WITNESS WHEREOF, we have signed this **policy** below and hereby enter into this Insurance Agreement.

*Kim M. Brunner*

Secretary

*Edward B Rust Jr*

President

## CLAIM GUIDELINES IN CASE OF A FLOOD

For the protection of you and your family, the following claim guidelines are provided by the National Flood Insurance Program (NFIP). If you are ever in doubt as to what action is needed, consult your insurance representative.

Know your insurance representative's name and telephone number. List them here for fast reference:

Insurance Representative _____

Representative's Phone Number _____

- Notify your insurance representative, in writing, as soon as possible after the flood.

- Determine the independent claims adjuster assigned to your claim and contact him or her if you have not been contacted within 24 hours after you reported the claim to your insurance representative.

- As soon as possible, separate damaged property from undamaged property so that damage can be inspected and evaluated.

- Discuss with the claims adjuster any need you may have for an advance or partial payment for your loss.

- To help the claims adjuster, try to take photographs of the outside of the premises showing the flooding and the damage and photographs of the inside of the premises showing the height of the water and the damaged property.

- Place all account books, financial records, receipts, and other loss verification material in a safe place for examination and evaluation by the claims adjuster.

- Work cooperatively and promptly with the claims adjuster to determine and document all claim items. Be prepared to advise the claims adjuster of the cause and responsible party(ies), if the flooding resulted from other than natural cause.

- Make sure that the claims adjuster fully explains, and that you fully understand, all allowances and procedures for processing claim payments on the basis of your proof of loss. This policy requires you to send us detailed proof of loss within 60 days after the loss.

- Any and all coverage problems and claim allowance restrictions must be communicated directly from the Company. Claims adjusters are not authorized to approve or deny claims; their job is to report to the Company on the elements of flood cause and damage.

At our option, we may accept an adjuster's report of the loss instead of your proof of loss. The adjuster's report will include information about your loss and the damages to your insured property. You must sign the adjuster's report. At our option, we may require you to swear to the report.

**STATE FARM FIRE AND CASUALTY COMPANY**
A Stock Company With Home Office in Bloomington Illinois

**DECLARATIONS PAGE** CERTIFIED TRUE

*7401 CYPRESS GARDENS BLVD*
*WINTER HAVEN FL 33888-0007*

**Named Insured**

1429-F292

KIDD, MARK & BUFFY
1101 TARANTO ST
WAVELAND MS     39576-2722

| Policy Number | 24-RC-0070-2 |
|---|---|

| Policy Period: | Effective Date | Expiration Date |
|---|---|---|
| 12 MONTHS | 10-30-2004 | 10-30-2005 |

The policy period begins and ends at 12:01 AM standard time at the residence premises.

## FLOOD POLICY - DWELLING FORM

**Issued pursuant to the National Flood Insurance Act of 1968 as amended and so administered by the Federal Emergency Management Agency.**

**Location of Residence Premises**
1101 TARANTO ST
WAVELAND MS     39576-2722

BUILDING RATED AS NON-ELEVATED
FLOOD HAZARD ZONE: B

| Coverages & Property | Limits of Liability | |
|---|---|---|
| A  DWELLING | $ | 125,000 |
| B  PERSONAL PROPERTY | $ | 50,000 |
| C | $ | |
| D  Increased Cost of Compliance | $ | * |

*See policy booklet for explanation of coverage.

| Deductibles | | |
|---|---|---|
| DWELLING | $ | 500 |
| PERS PROPERTY | $ | 500 |

**In case of loss under this policy, we cover only that part of the loss over the deductible stated.**

Coverage A - Inflation Coverage Index:

Coverage B - Consumer Price Index:

| Forms, Options, and Endorsements | | **POLICY PREMIUM** | $ | 249.00 |
|---|---|---|---|---|
| FLOOD POLICY DWELLING FORM | FP-7920.4 | | | |
| INCREASE COST OF COMPLIANCE | FE-8746 | | | |

*INCLUDES $ 11 FEDERAL POLICY FEE

Your policy consists of this page, any endorsements and the policy form. PLEASE KEEP THESE TOGETHER.

** See Attached Insert

FP-7060.1C
HC          Prepared     06-23-2008

MEYERS, MICHAEL W
PH: 228-467-5011



EXHIBIT
B

FEE BILL, CIVIL CASES, CIRCUIT COURT

State of Mississippi
Hancock County

KIDD, MARK & BUFFIE VS STATE FARM FIRE & CASUALTY CO. ET AL

Case No. 08-0448          Paid by CHECK                    Receipt No.  20693
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                    CLERK'S FEES                      85.00
                    JURY TAX                           3.00
                    COURT REPORTERS FEE               10.00
                    LAW LIBRARY                        2.50
                    COURT ADMINISTRATOR                2.00
                    STATE CT ED FUND                   2.00
                    COURT CONSTITUENTS                  .50
                    ELECTRONIC COURT                  10.00
                    LEGAL ASSISTANCE                   5.00

                                            ===========
                              Total          $120.00
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


Payment received from HAWKINS, STRACENER & GIBSON



Transaction   10447 Received  8/27/2008 at  8:51 Drawer   1 I.D. KENDRA

Account Balance Due        0.00              Receipt Amount      $120.00

By _____ D.C.   Karen Ladner Ruhr, Circuit Clerk

**COVER SHEET**
**Civil Case Filing Form**
*(To be completed by Attorney/Party Prior to Filing of Pleading)*

Mississippi Supreme Court
Administrative Office of Courts

Form AOC/01
(Revised 1/1/2001)

| Court Identification | Case Year | Docket Number |
|---|---|---|
| Docket Number | 2008 | 010444 |
| County # Judicial Dist. (CH, CI, CO) District | | Local Docket ID |

This area is to be completed by clerk

Case Number if filed prior to 1/1/94

---

IN THE **CIRCUIT** COURT OF **HANCOCK** COUNTY

Short Style of Case: MARK KIDD V. STATE FARM FIRE AND CASUALTY COMPANY

Party Filing Initial Pleading: Type/Print Name EDWARD GIBSON    MS Bar No. 100640

___ Check (✓) if Not an Attorney    ___ Check (✓) if Pro Hac Vice    Signature _____

Compensatory Damages Sought: $ _____    Punitive Damages Sought: $ _____

Is Child Support contemplated as an issue in this suit? ___ Yes ✓ No    If "yes" is checked, please submit a completed Child Support Information Sheet with Final Decree/Judgment

PLAINTIFF - PARTY(IES) INITIALLY BRINGING SUIT SHOULD BE ENTERED FIRST (FIRST NAME IN SHORT STYLE) - ENTER ADDITIONAL PLAINTIFFS ON SEPARATE FORM

Individual KIDD / MARK
   Last Name   First Name   Maiden Name, if Applicable   Middle Init.   Jr/Sr/III/IV

Address of Plaintiff: 1101 TARANTO STREET, WAVELAND, MS 39576

___ Check (✓) if Individual Plaintiff is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
Estate of _____

___ Check (✓) if Individual Plaintiff is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity:
D/B/A / Agency _____

Business _____
   Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___ Check (✓) if Business Plaintiff is filing suit in the name of an entity other than the above, and enter below:
D/B/A: _____

DEFENDANT - NAME OF DEFENDANT (FIRST NAME IN SHORT STYLE) - ENTER ADDITIONAL DEFENDANTS ON SEPARATE FORM

Individual _____ ( _____ )
   Last Name   First Name   Maiden Name, if Applicable   Middle Init.   Jr/Sr/III/IV

___ Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:
Estate of _____

___ Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (d/b/a) or State Agency, and enter entity:
D/B/A / Agency _____

Business STATE FARM FIRE AND CASUALTY COMPANY
   Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___ Check (✓) if Business Defendant is being sued in the name of an entity other than the above, and enter below:
D/B/A: _____

ATTORNEY FOR THIS DEFENDANT: _____ Bar No. ___ or ___ Name: _____    Pro Hac Vice (✓) ___

---

*In left hand column, check one (1) box that best describes the nature of this suit. In right hand column check all boxes which indicate secondary claims.*

**Business/Commercial**
- [ ] Accounting (Business)
- [ ] Bankruptcy
- [ ] Business Dissolution - Corporation
- [ ] Business Dissolution - Partnership
- [ ] Debt Collection
- [ ] Employment
- [ ] Examination of Debtor
- [ ] Execution
- [ ] Foreign Judgment
- [ ] Garnishment
- [ ] Pension
- [ ] Receivership
- [ ] Replevin
- [ ] Stockholder Suit
- [ ] Other

**Domestic Relations**
- [ ] Child Custody/Visitation
- [ ] Child Support
- [ ] Contempt
- [ ] Divorce: Fault
- [ ] Divorce: Irreconcilable Differences
- [ ] Domestic Abuse
- [ ] Emancipation
- [ ] Modification
- [ ] Paternity
- [ ] Property Division
- [ ] Separate Maintenance
- [ ] Termination of Parental Rights
- [ ] UIFSA (formerly URESA)
- [ ] Other

**Contract**
- [✓] Breach of Contract
- [ ] Installment Contract
- [✓] Insurance
- [ ] Product Liability under Contract
- [✓] Specific Performance
- [ ] Other

**Probate**
- [ ] Accounting (Probate)
- [ ] Birth Certificate Correction
- [ ] Commitment
- [ ] Conservatorship
- [ ] Guardianship
- [ ] Heirship
- [ ] Intestate Estate
- [ ] Minor's Settlement
- [ ] Muniment of Title
- [ ] Name Change
- [ ] Power of Attorney
- [ ] Testate Estate
- [ ] Will Contest
- [ ] Other

**Statutes/Rules**
- [ ] Bond Validation
- [ ] Civil Forfeiture
- [ ] Declaratory Judgment
- [ ] ERISA
- [ ] Eminent Domain
- [ ] Extraordinary Writ
- [ ] Federal Statutes
- [ ] Injunction or Restraining Order
- [ ] Municipal Annexation
- [ ] Racketeering (RICO)
- [ ] Railroad
- [ ] Seaman
- [ ] Other

**Appeals**
- [ ] Administrative Agency
- [ ] County Court
- [ ] Hardship Petition (Driver License)
- [ ] Justice Court
- [ ] MS Employm't Security Comm'n
- [ ] Municipal Court
- [ ] Oil & Gas Board
- [ ] Workers' Compensation
- [ ] Other

**Children and Minors - Non-Domestic**
- [ ] Adoption - Contested
- [ ] Adoption - Uncontested
- [ ] Consent to Abortion for Minor
- [ ] Removal of Minority
- [ ] Other

**Torts-Personal Injury**
- [✓] Bad Faith
- [ ] Fraud
- [ ] Loss of Consortium
- [ ] Malpractice - Legal
- [ ] Malpractice - Medical
- [ ] Negligence - General
- [ ] Negligence - Motor Vehicle
- [ ] Products Liability
- [ ] Wrongful Death
- [ ] Other

**Mass Tort**
- [ ] Asbestos
- [ ] Chemical Spill
- [ ] Dioxin
- [ ] Hand/Arm Vibration
- [ ] Hearing Loss
- [ ] Radioactive Materials
- [ ] Other

**Real Property**
- [ ] Adverse Possession
- [ ] Ejectment
- [ ] Eminent Domain
- [ ] Judicial Foreclosure
- [ ] Lien Assertion
- [ ] Partition
- [ ] Tax Sale: Confirm/Cancel
- [ ] Title Boundary/Easement
- [ ] Other

FILED
AUG 26 2008
TIMOTHY A. KELLAR
CIRCUIT CLERK, HANCOCK CO.
BY _____ D.C.

IN THE CIRCUIT          COURT OF HANCOCK          COUNTY, MISSISSIPPI

_____ JUDICIAL DISTRICT, CITY OF _____

Docket No._____ • _____ _____    Docket No. If Filed
                File Yr      Chronological No      Clerk's Local ID    Prior to 1/1/94  _____

### PLAINTIFFS IN REFERENCED CAUSE - Page 1 of _1_ Plaintiffs Pages
### IN ADDITION TO PLAINTIFF SHOWN ON CIVIL CASE FILING FORM COVER SHEET

**Plaintiff #2:**

Individual: KIDD _____    BUFFIE _____    (_____    _____    _____
           Last Name                First Name              Maiden Name, if Applicable   Middle Init.   Jr/Sr/III/IV

___ Check (✓) if Individual Plaintiff is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

   Estate of _____

___ Check (✓) if Individual Plaintiff is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

   D/B/A _____

**Business** _____
             Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___ Check (✓) if Business Plaintiff is filing suit in the name of an entity other than the name above, and enter below:

   D/B/A _____

ATTORNEY FOR THIS PLAINTIFF: _____ Bar # or Name: _____    *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

**Plaintiff #3:**

Individual: _____    _____    (_____    _____    _____
           Last Name                First Name              Maiden Name, if Applicable   Middle Init.   Jr/Sr/III/IV

___ Check (✓) if Individual Plaintiff is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

   Estate of _____

___ Check (✓) if Individual Plaintiff is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

   D/B/A _____

**Business** _____
             Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___ Check (✓) if Business Plaintiff is filing suit in the name of an entity other than the name above, and enter below:

   D/B/A _____

ATTORNEY FOR THIS PLAINTIFF: _____ Bar # or Name: _____    *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

**Plaintiff #4:**

Individual: _____    _____    (_____    _____    _____
           Last Name                First Name              Maiden Name, if Applicable   Middle Init.   Jr/Sr/III/IV

___ Check (✓) if Individual Plaintiff is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

   Estate of _____

___ Check (✓) if Individual Plaintiff is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

   D/B/A _____

**Business** _____
             Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___ Check (✓) if Business Plaintiff is filing suit in the name of an entity other than the name above, and enter below:

   D/B/A _____

ATTORNEY FOR THIS PLAINTIFF: _____ Bar # or Name: _____    *Pro Hac Vice* (✓)___ Not an Attorney(✓)___

FILED

AUG 2 0 2008

KAREN LADNER RUHR
CIRCUIT CLERK, HANCOCK CO.
BY _____ D.C.

IN THE CIRCUIT_____ COURT OF HANCOCK_____ COUNTY, MISSISSIPPI

_____ JUDICIAL DISTRICT, CITY OF _____

Docket No._____                                    Docket No. If Filed
         File Yr      Chronological No.    Clerk's Local ID    Prior to 1/1/94 _____

### DEFENDANTS IN REFERENCED CAUSE - Page 1 of ⊥ Defendants Pages
### IN ADDITION TO DEFENDANT SHOWN ON CIVIL CASE FILING FORM COVER SHEET

**Defendant #2:**

Individual: MEYERS                MIKE                ( _____ )
              Last Name              First Name              Maiden Name, if Applicable    Middle Init.    Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A _____

Business _____
          Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

D/B/A _____

ATTORNEY FOR THIS DEFENDANT: _____ Bar # or Name: _____        Pro Hac Vice (✓)___ Not an Attorney(✓)___

**Defendant #3:**

Individual: DOE                JOHN                ( _____ )        1-10
              Last Name              First Name              Maiden Name, if Applicable    Middle Init.    Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of _____

___Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A _____

Business _____
          Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the name above, and enter below:

D/B/A _____

ATTORNEY FOR THIS DEFENDANT: _____ Bar # or Name: _____        Pro Hac Vice (✓)___ Not an Attorney(✓)___

**Defendant #4:**

Individual: _____                _____                ( _____ )
              Last Name              First Name              Maiden Name, if Applicable    Middle Init.    Jr/Sr/III/IV

___Check (✓) if Individual Defendant is acting in capacity as Executor(trix) or Administrator(trix) of an Estate, and enter style:

Estate of _____

Check (✓) if Individual Defendant is acting in capacity as Business Owner/Operator (D/B/A) or State Agency, and enter that name below:

D/B/A _____

Business _____
          Enter legal name of business, corporation, partnership, agency - If Corporation, indicate state where incorporated

___Check (✓) if Business Defendant is being sued in the name of an entity other than the above, and enter below:

D/B/A _____

ATTORNEY FOR THIS DEFENDANT: _____ Bar # or Name: _____        Pro Hac Vice (✓)___ Not an Attorney(✓)___